UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MELVYN LETULIGASENOA, Individually and on behalf of similarly situated and aggrieved employees of Defendants in the State of California<br><br>         Plaintiffs,<br><br>   v.<br><br>INTERNATIONAL PAPER COMPANY; TIN, INC., which will do business in California as TEMPLE-INLAND, INC., and DOES 1 through 50, Inclusive,<br><br>         Defendants. | Case No.: 5:13-CV-05272-EJD<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND**<br><br>**[Re: Docket No. 19]** |

Presently before the court is Plaintiff Melvyn Letuligasenoa's ("Plaintiff") motion to remand this case to Santa Clara County Superior Court. Docket Item No. 19. Plaintiff filed this putative class action in that court against Defendants International Paper Company ("IP") and Tin, Inc., doing business as Temple-Inland, Inc. ("TIN") (collectively, "Defendants") alleging violations of various wage and hour provisions of the California Labor Code, representative claims under the Private Attorneys General Act ("PAGA") and violation of the California Business and Professions Code. Defendants removed the case to this court under the Class Action Fairness Act ("CAFA"). Through the instant motion, Plaintiff seeks remand on the basis that Defendants have

1

Case No.: 5:13-CV-05272-EJD
ORDER GRANTING PLAINTIFF'S MOTION TO REMAND

not made a sufficient showing that there is more than $5,000,000 in controversy as required by CAFA. The court found this matter suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b) and previously vacated the hearing. Having carefully reviewed the parties' briefing, and for the following reasons, the court GRANTS Plaintiff's Motion to Remand.

### I.     FACTUAL AND PROCEDURAL BACKGROUND

Defendant IP and Defendant TIN are in the paper and packaging industry. Decl. of Alice S. Wang in Supp. of Removal ("Wang Decl.") Ex. A ¶ 7, Docket Item No. 5. Defendant TIN was acquired by Defendant IP on February 13, 2012. Id. ¶ 16. The acquisition included Defendant TIN's California employees. Decl. of Kathleen McJunkin in Supp. of Removal ("McJunkin Decl.") ¶ 10, Docket Item No. 2. The acquisition also included at least two TIN facilities in California: the Gilroy Bay Sheets facility and the Gilroy Container facility. Id. Plaintiff worked as a non-exempt employee at the Gilroy Bay Sheets facility. See id. ¶ 7.

On October 4, 2013, Plaintiff filed this case in Santa Clara County Superior Court, alleging that Defendants, collectively, engaged in a systematic pattern of wage and hour violations under the Labor Code and the Industrial Labor Commission Wage Orders ("IWC") in order to "increase their level of productivity." Wang Decl. Ex. A ¶ 3, Dkt. No. 5. Specifically, Plaintiff alleges the following claims: (1) failure to provide mandated meal periods in violation of Labor Code §§ 226.7, 512, 1198 and the "Meal Periods" Section of the IWC Wage Order; (2) failure to provide mandated meal periods in violation of Labor Code §§ 226.7, 1198 and the "Rest Period" Section of the IWC Order; (3) failure to pay minimum and regular wages in violation of Labor Code §§ 1197, 1198 and the "Minimum Wages" Section of the IWC Wage Order; (4) failure to pay overtime wages in violation of Labor Code §§ 510, 1198 and the "Days and Hours Worked" Section of the IWC Wage Order; (5) failure to pay vested vacation wages in violation of Labor Code § 227.3; (6) failure to timely pay all wages due upon separation of employment in violation of Labor Code §§ 201, 202, 1198 and the "Minimum Wages" Section of the IWC Wage Order; (7) failure to maintain and provide accurate itemized wage statements in violation of Labor Code §§ 226, 1198, and the "Records" Section of the IWC Wage Order; (8) failure to maintain and provide accurate records in violation of Labor Code §§ 1174, 1198 and the "Records" Section of the IWC

2
Case No.: 5:13-CV-05272-EJD
ORDER GRANTING PLAINTIFF'S MOTION TO REMAND

1  Wage Order; (9) representative claims under PAGA; and (10) violation of California Business and
2  Professions Code § 17200, et. seq. Id. ¶¶ 51-162.

3  Plaintiff brings these claims on behalf of himself and eleven putative classes of similarly
4  situated current and former exempt and non-exempt employees of Defendants. Id. Plaintiff
5  identifies the putative classes as: (a) the Temple-Inland Vacation Class; (b) the International Paper
6  Vacation Class; (c) the Temple-Inland Meal Period Class; (d) the International Paper Meal Period
7  Class; (e) the Temple-Inland Rest Period Class; (f) the International Paper Rest Period Class; (g)
8  the Temple-Inland Off-the-Clock Class; (h) the International Paper Off-the-Clock Class; (i) the
9  Temple-Inland Wage Statement Class; (j) the International Paper Wage Statement Class; and (k)
10 the Temple-Inland and/or International Paper Final Paycheck Class. Id. ¶ 47. Additional details of
11 each class are provided below where relevant to the analysis.

12 Defendants removed the case to this court on November 13, 2013 under CAFA. Notice of
13 Removal ("Removal"), Docket Item No. 1. Plaintiff filed the instant Motion to Remand on
14 December 13, 2013. Docket Item No. 19. Defendants filed an Opposition to Plaintiff's Motion to
15 Remand on December 27, 2013. Docket Item No. 24. Plaintiff filed a Reply on January 1, 2014.
16 Docket Item No. 28. The parties do not dispute that CAFA's minimal diversity and minimal class
17 size requirements are met. Rather, Plaintiff seeks remand solely on the ground that Defendants
18 have not made a sufficient showing that there is more than $5,000,000 in controversy as required to
19 establish federal jurisdiction under CAFA.

20 **II.    LEGAL STANDARD**

21 A defendant may remove a civil action filed in state court to a federal district court so long
22 as the district court could have exercised original jurisdiction over the matter. 28 U.S.C. § 1441(a).
23 The federal removal statute provides that if, at any time before judgment, it appears that the district
24 court lacks subject matter jurisdiction over a case previously removed from state court, the case
25 must be remanded. 28 U.S.C. § 1447(c). The Ninth Circuit "strictly construe[s] the removal statute
26 against removal jurisdiction." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992); see also
27 Ethridge v. Harbor House Rest., 861 F.2d 1389, 1393 (9th Cir. 1988). "Federal jurisdiction must be
28 rejected if there is any doubt as to the right of removal in the first instance." Id. "The 'strong

1  presumption' against removal jurisdiction means that the defendant always has the burden of

2  establishing that removal is proper." Id.

3  **III.    DISCUSSION**

4  Under CAFA, a federal district court may exercise jurisdiction over a class action where (1)

5  the amount in controversy exceeds $5,000,000; (2) any member of the plaintiff class is a citizen of

6  a different state from any defendant; (3) the primary defendants are not states, state officials or

7  other government entities against whom the district court may be foreclosed from ordering relief;

8  and (4) the class has at least 100 members. 28 U.S.C. §§ 1332(d)(2), (d)(5). "[U]nder § 1332(d)(6),

9  the claims of class members are aggregated to determine whether the amount in controversy

10  exceeds $5,000,000." Abrego Abrego v. Dow Chem. Co., 443 F.3d 676, 684 (9th Cir. 2006). Here,

11  the parties only dispute whether CAFA's first requirement—an amount in controversy exceeding

12  $5,000,000—is met.

13  To ascertain the amount in controversy, a court must first look to the complaint. Lewis v.

14  Verizon Commc'ns, Inc., 627 F.3d 395, 399 (9th Cir. 2010). When, in the context of removal, the

15  amount in controversy is contested and it is unclear or ambiguous from the face of the complaint

16  whether the requisite amount in controversy has been pled, the removing defendant must establish

17  by a preponderance of the evidence that the amount in controversy exceeds $5,000,000.

18  Guglielmino v. McKee Foods Corp., 506 F.3d 696, 699 (9th Cir. 2007); see also Lowdermilk v.

19  U.S. Bank Nat'l Ass'n, 479 F.3d 994, 998 (9th Cir. 2007) ("[W]hen the plaintiff fails to plead a

20  specific amount of damages, the defendant seeking removal 'must prove by a preponderance of the

21  evidence that the amount in controversy requirement has been met.'"), overruled on other grounds.

22  CAFA's amount in controversy requirement cannot be met through "speculation and conjecture."

23  Lowdermilk, 479 F. 3d at 1002. Rather, the removing defendant must proffer "summary-judgment-

24  type evidence relevant to the amount in controversy at the time of removal." Abrego Abrego, 443

25  F.3d at 690 (quoting Singer v. State Farm Mut. Auto Ins. Co., 116 F. 3d 373, 377 (9th Cir. 1997)).

26  "A defendant must set forth the underlying facts supporting its assertion that the amount in

27  controversy exceeds the statutory minimum." Roth v. Comerica Bank, 799 F. Supp. 2d 1107, 1126

28  (C.D. Cal. 2010) (citations omitted). "In measuring the amount in controversy, a court must assume

4
Case No.: 5:13-CV-05272-EJD
ORDER GRANTING PLAINTIFF'S MOTION TO REMAND

that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." Kenneth Rothschild Trust v. Morgan Stanley Dean Witter, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002) (internal quotations and citation omitted). Courts should resolve any doubts as to removability in favor of remanding the case to state court. Gaus, 980 F. 2d at 566.

Here, Plaintiff does not allege a specific amount in controversy in his complaint. Therefore, the court must determine whether Defendants have established by a preponderance of the evidence that the amount in controversy exceeds $5,000,000. The court will do so by analyzing the scope of the allegations in the Plaintiff's complaint, addressing the manner in which Defendants estimate the categories of potential damages, examining the reasonableness of the variables used, and addressing Defendants' argument that the ultimate amount in controversy would actually be much higher than the calculations below.[1]

### a. Defendants' Estimate of Potential Damages

In support of their Notice of Removal, Defendants provide the declaration of Human Resources Specialist Kathleen McJunkin. See Dkt. No. 2. In her declaration, Ms. McJunkin reports about the number of exempt and non-exempt employees during the relevant time period from the Gilroy Bay Sheets facility. Id. ¶ 11. Based on these single-facility numbers, Defendants estimated the amount in controversy to be: $1,474,834.80 for meal period penalties; $1,474,834.80 for rest period penalties; $245,805.80 for unpaid wages; $471,000 for minimum wage civil penalties; $122,902.90 for unpaid overtime premium; $184,354.35 of liquidated damages for unpaid wages; $92,177.18 of liquidated damages for unpaid overtime premium; $195,000 for Section 558 penalties; $421,574.40 for waiting time penalties for non-exempt employees; $133,872 for waiting time penalties for exempt employees; $189,000 for pay stub penalties; $204,000 for PAGA penalties; and $1,302,339 for attorneys' fees. Decl. of Christopher C. Hoffman in Supp. Of Removal ("Hoffman Decl.") ¶ 49, Docket Item No. 3. Thus, according to Defendants' calculations

---

[1] The court acknowledges Defendants' Evidentiary Objections to the Declaration of Marta Manus in Support of Plaintiff's Motion to Remand to State Court ("Manus Decl."), Docket Item No. 25. The court did not rely on this declaration in analyzing this motion and thus declines to rule on this motion.

5
Case No.: 5:13-CV-05272-EJD
ORDER GRANTING PLAINTIFF'S MOTION TO REMAND

at the time of removal, the total amount in controversy just with respect to the Gilroy Bay Sheets facility was $6,511,695.28. Id.

Defendants modified their amount-in-controversy estimate in response to information contained in Plaintiff's Motion to Remand. Particularly, Defendants expanded the waiting-time penalties class from 10 exempt and 78 non-exempt employees at Gilroy Bay Sheets facility to 316 former employees from across all TIN facilities. Opp'n at 7:6-16, Dkt. No. 24. As a result, the waiting time penalties calculation increased from $421,574.40 to $1,707,916.80. Id. at 7:10-16. Defendants also reduced their calculation of the meal period class and rest period class damages based on Plaintiff's argument that the meal period class was limited to employees in the "production department." Id. at 3:6-8. Defendants estimated the modified amount in controversy to be: $1,403,671.60 for meal period penalties; $1,403,671.60 for rest period penalties; $233,945.27 for unpaid wages; $447,450 for minimum wage civil penalties; $116,972.63 for unpaid overtime premium; $175,458.95 of liquidated damages for unpaid wages; $87,729.48 of liquidated damages for unpaid overtime premium; $185,250 for Section 558 penalties; $1,707,916.80 for waiting time penalties for non-exempt employees; $133,872 for waiting time penalties for exempt employees; $179,550 for pay stub penalties; $48,450 for PAGA penalties; and $1,530,984.58 for attorneys' fees. Supplemental Declaration of Christopher C. Hoffman in Supp. of Def. Opp'n ("Hoffman Supp. Decl.") ¶ 51, Dkt. No. 24-3. The total amount in controversy under this revised estimate is $7,654,922.91. Id.

In its analysis, the court will refer to Defendants' original amount in controversy estimates because the key underlying assumptions and calculations are essentially the same in the original and revised amounts and, as discussed below, these assumptions do not suffice to meet Defendants' burden. However, because there is a substantial discrepancy between the original and revised amounts of the non-exempt waiting time penalties, the court will address both estimates only for this category. To determine the scope of the allegations, the court will only consider Plaintiff's complaint and not the class limits Plaintiff asserts in his Motion to Remand. See Harris v. Bankers Life & Cas. Co., 425 F.3d 689, 694 (9th Cir. 2005) ("removability under § 1446(b) is determined through examination of the four corners of the applicable pleadings, not through subjective

6
Case No.: 5:13-CV-05272-EJD
ORDER GRANTING PLAINTIFF'S MOTION TO REMAND

knowledge or a duty to make a further inquiry"); see also St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 294 (1938) ("If the plaintiff could, no matter how bona fide his original claim in the state court, reduce the amount of his demand to defeat federal jurisdiction the defendant's supposed statutory right of removal would be subject to the plaintiff's caprice.").

### i. Individual Class Estimates

#### 1. Meal Period Calculations

Plaintiff alleges that Defendants failed to provide mandated meal periods for the members of the "Meal Period Classes" in violation of Labor Code §§ 226.7, 512, 1198 and the "Meal Period" section of the IWC Wage Order. Wang Decl. Ex. A ¶ 58, Dkt. No. 5. "An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes." Cal. Lab. Code § 512(a). Under the Labor Code, "[a]n employer shall not require an employee to work during a meal or rest… period mandated pursuant to an… order of the Industrial Welfare Commission…" Cal. Lab. Code § 226.7(b). Additionally, "[i]f an employer fails to provide an employee a meal or rest…period…the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest… period is not provided." Cal. Lab. Code § 226.7(c).

Plaintiff defines the meal period classes as:

> All non-exempt California employees of [TIN and IP] who at any time since the four years preceding the filing of the complaint through the date of certification worked on at least one occasion more than five hours and who according to [TIN records and IP records] were not provided with a duty-free meal period of at least 30 minutes in length.

Wang Decl. Ex. A ¶¶ 47(c)-(d), Dkt. No. 5.

Defendants claim that "[d]uring the relevant time period, all non-exempt employees were regularly scheduled to work an eight (8) hour day." McJunkin Decl. ¶ 26, Dkt. No. 2. Thus, in calculating the estimate of $1,474,834.80 for the meal period penalties, Defendants assume that "Plaintiff seeks a class representing all California employees of Defendants." See Hoffman Decl. ¶ 2, Dkt. No. 3. Defendants used this assumption to calculate the average number of all full-time

7
Case No.: 5:13-CV-05272-EJD
ORDER GRANTING PLAINTIFF'S MOTION TO REMAND

equivalent employees ("FTEs") during each year of the class period.[2] Id. ¶ 4. Defendants also assume that there are 50 workweeks per year and 202 actual workweeks in the class period.[3] Id. Defendants multiply the number of FTEs employed during each year of the class period by the actual number of workweeks per year to arrive at a total of 13,098 workweeks in the class period.[4] Id. ¶ 5. Defendants further assume that the meal period violation occurred on a daily basis to each FTE during the class period. Hoffman Decl. ¶ 22, Dkt. No. 3. Since Plaintiff seeks "an award of one additional hour of pay at the regular rate of compensation pursuant to Labor Code § 227.6(b) [per violation]," Defendants assume all class members can recover one hour of wages per violation. Id. ¶ 21. Defendants multiply 13,098 weeks by 5 violations (based on five days per week) by an average hourly wage of $22.52 to arrive at a total meal period class estimate of $1,474,834.80. Id. ¶ 23.

Defendants' calculations are flawed for two reasons. First, the assumption that all non-exempt employees are included in the class is not supported by the complaint. The "Meal Period Class" members include those non-exempt employees who "worked on at least one occasion more than five hours." Considering that, according to Defendants, all non-exempt employees were scheduled to work eight-hour days, it would be reasonable to assume that all non-exempt employees worked "more than five hours," in satisfaction of that portion of the class definition. However, by its own terms, the "Meal Period Class" is further limited only to those non-exempt employees "who according to the Defendants' records were not provided with a duty-free meal period of at least 30 minutes." Therefore, the class only encompasses those non-exempt employees who were actually denied a meal period. Plaintiff's allegations in the complaint do not facially suggest that 100% of non-exempt employees were denied a meal break. Therefore, Defendants' assumption that the class includes all non-exempt employees is overly broad.

Second, the assumption that every class member was denied a meal break every single day is speculative. As discussed above, Defendants account for one meal period violation per employee

---

[2] Defendants estimate 66, 66, 69, 63, and 60 FTEs, respectively, for each year of the class period.
[3] Defendants estimate 13, 50, 50, 50, and 39 workweeks, respectively, for each year of the class period.
[4] Defendants used the following calculations: 66 FTEs x 13 weeks = 858; 66 FTEs x 50 weeks = 3300; 69 FTEs x 50 weeks = 3450; 63 FTEs x 50 weeks = 3150; and 60 FTEs x 39 weeks = 2340.

per workday for the entire relevant class period. However, there is no evidence or allegations upon which one can adduce a 100% violation rate, i.e. that 100% of the class members were denied a meal period 100% of the time. The complaint does not appear to specifically claim that Defendants committed meal period violations against every class member on a daily basis.  Nor do Defendants provide their own evidence or analysis of the application of the relevant policies. The violation frequency proposed by Defendants is thus unsupported by the record. See Roth 799 F. Supp. 2d at 1129 (concluding that cases allowing defendants to rely on unsupported assumptions of 100% violation rates "improperly shift the burden to plaintiff to refute speculative assertions of jurisdiction and establish that there is no jurisdiction").

The court acknowledges that a removing defendant is not responsible for conducting "a fact-specific inquiry into whether the rights of each and every potential class member were violated" that results in answering "the ultimate question the litigation presents." Bryan v. Wal-Mart Stores, Inc., No. 08-CV-5221 SI, 2009 WL 440485, *3 (N.D. Cal. Feb. 23, 2009). However, in evaluating whether a removing defendant has met its burden, it is proper for courts to consider which party has access to or control over the records and information required to determine whether the amount in controversy requirement is met. Id. at 1129. Here, Defendants "are in the best position to adduce evidence regarding the working hours and wages" of their employees. Roth, 799 F. Supp. 2d at 1130. The 100% class inclusion and the 100% violation rates are simply too broad given the information in Defendants' control. While the court does not expect Defendants here to resolve actual liability at this stage, it does expect them to put forth a more specific effort towards establishing jurisdiction. As suggested by the court in Roth, Defendants in this case could have proffered, for example, evidence regarding their actual policies or provided a sampling showing that it is more likely than not that there was a 100% violation rate. Id. at 1130.

### 2. Rest Period Calculations

Plaintiff alleges Defendants failed to provide mandated rest periods for the members of the "Rest Period Classes" in violation of Labor Code §§ 226.7, 1198 and the "Rest Periods" section of the IWC Wage Order. Wang Decl. Ex. A ¶¶ 71-73, Dkt. No. 5. Plaintiff defines the rest period classes specifically as:

9
Case No.: 5:13-CV-05272-EJD
ORDER GRANTING PLAINTIFF'S MOTION TO REMAND

> All non-exempt California employees of [TIN and IP] who at any time since the four (4) years preceding the filing of the complaint through the date of certification worked on at least one occasion at least 3.5 hours and who were not authorized and permitted a duty-free rest period of at least 10 minutes in length.

Wang Decl. Ex. A ¶¶ 47(e)-(f), Dkt. No. 5.

In calculating the estimate of $1,474,834.80 for the rest period penalties, Defendants again presume that all non-exempt employees are class members and that they were all denied rest breaks every workday. Hoffman Decl. ¶¶ 25-26, Dkt. No. 3. These assumptions are flawed and unsupported by the record for the same reasons as set forth in the previous section. Moreover, Defendants err in separately calculating estimates for the meal and rest period classes because Labor Code § 226.7 limits employees denied meal periods, rest periods, or both to a single recovery of an additional hour's wages per day. Cal. Labor Code § 226.7; Roth, 799 F. Supp. 2d at 1120; see also Lyon v. W.W. Grainger, Inc., No. 10-CV-00884-WHA, 2010 WL 1753194, *4 (N.D. Cal. Apr. 29, 2010) (holding that the defendant's calculation of the amount in controversy with respect to missed meal and rest breaks was too high because, inter alia, it assumed "recovery for each violation instead of one recovery per day").

### 3. Unpaid Wages, Overtime Wages and Liquidated Damages Calculations

Plaintiff alleges that Defendants failed to pay minimum wages for the members of the "Off-the-Clock Class" in violation of Labor Code §§1197, 1198 and the "Minimum Wages" section of the IWC Wage Order. Wang Decl. Ex. A ¶¶ 81-84, Dkt No. 5. Under California law, the "minimum wage for employees fixed by the commission is the minimum wage to be paid to employees, and the payment of a less wage than minimum wage so fixed is unlawful." Cal. Lab. Code § 1197. Plaintiff also alleges Defendants failed to pay overtime wages for the members of the "Off-the-Clock Class" in violation of Labor Code §§510, 1198 and the "Days and Hours Worked" section of the IWC Wage Order. Wang Decl. Ex. A ¶ 98. Under California law, "[a]ny work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee." Cal. Lab.

Code §510. Plaintiff further seeks recovery of liquidated damages under Labor Code § 1194.2. Wang Decl. Ex. A ¶ 89, Dkt. No. 5. Under California law, "[i]n any action under Section…1194 to recover wages because of the payment of a wage less than the minimum wage fixed by an order of the commission or by statute, an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon." Cal. Labor Code § 1194.2(a). Since all of these claims are built upon the unpaid wages calculations, the court will analyze them together.

In calculating the estimate of $245,805.80 for unpaid wages, Defendants assume that all non-exempt employees worked a total of fifty unpaid minutes per week based on ten minutes per day of unpaid wages during the class period. Hoffman Decl. ¶¶ 7-8, Dkt. No. 3. Defendants do not explain the basis for this assumption or submit evidence to support it other than by stating: "Conservatively, we estimate that Plaintiff and members of the putative class worked a total of 10 minutes per day unpaid between these meal breaks (30 minute meal period plus two 10-minute rest breaks)." Id. ¶ 7. Moreover, Defendants again make a 100% inclusion and 100% violation assumption, although Plaintiff defines the off-the-clock classes as non-exempt employees who "were suffered or permitted to work and who were not paid for all time worked." Wang Decl. Ex. A ¶¶ 47 (g)-(h), Dkt. No. 5. These assumptions are unsupported by the record for the same reasons as set forth in previous sections.

In calculating the estimate of $122,902.90 for overtime wages, Defendants assume that any additional wages sought by Plaintiff are "necessarily overtime wages" because all non-exempt employees worked forty hours per week and eight hours per day. Hoffman Decl. ¶¶ 11-12, Dkt. No. 3. Defendants also state that 90% of non-exempt employees worked overtime. McJunkin Decl. ¶ 27, Dkt. No. 2. Defendants assume overtime wages were denied on a daily basis and use the unpaid wages previously detailed to calculate the overtime premium payments. Hoffman Decl. ¶¶ 10, 12, Dkt. No. 3. Defendants' assumptions on overtime wages are insufficient for three reasons. First, the overtime calculations are based on the flawed unpaid wages estimate. Second, Defendants employ a 100% inclusion rate, despite the fact that Ms. McJunkin stated that 90% of employees worked overtime. Third, Defendants again assume a 100% violation rate.

As to Defendants' liquidated damages calculation, such damages are based on the "amount equal to wages unlawfully paid." Cal. Lab. Code § 1194.2. Since Defendants' liquidated damages calculation is based on the amount equal to Defendants' unpaid and overtime wage calculations, the liquidated damages calculation is also flawed.

### 4. Waiting Time Penalty Calculations

Plaintiff claims Defendants failed to timely pay all wages due upon separation for the members of the "Final Paycheck Class" in violation of Labor Code §§ 201-02, 1198 and the "Minimum Wages" section of the IWC Wage Order. Wang Decl. Ex. A ¶¶ 112, 115-116, Dkt No. 5. Under California law, employers must pay all wages owed within seventy-two hours of when an employee resigns, and immediately when the employee is discharged or laid off. Cal. Lab. Code §§ 201-202. When an employer willfully fails to pay wages upon separation in a timely fashion, the employee is entitled to normal wages for every day the wages are late, up to a maximum of thirty days. Cal. Lab. Code § 203. Plaintiff defines the "Final Paycheck Class" specifically as:

All California employees of [TIN and IP] who at any time since the three (3) years preceding the filing of the complaint through the date of certification:

(i) were discharged from their employment and who were not paid immediately all of their wages earned and unpaid at the time of their discharge including vacation wages

(ii) did not have a written contract for a definite period and quit their employment with at least 72 hours previous notice of their intention to quit, and who were not paid all of their wages at the time of quitting including vacation wages, and/or

(iii) did not have a written contract for a definite period and quit their employment without at least 72 hours previous notice of their intention to quit, and who were not paid all of their wages, including vacation wages, not later than 72 hours after quitting and who were not paid waiting time penalties under California Labor Code section 203, for each day the wages went unpaid from the due date until paid or until an action is commenced, to a maximum of 30 calendar days.

Wang Decl. Ex. A at 11 ¶ 47(k), Dkt. No. 5.

Defendants contend that Plaintiff seeks waiting time penalties for both exempt and non-exempt employees. Hoffman Decl. ¶ 18, Dkt. No. 3. For exempt employees, Defendants state there were ten exempt employees who were getting paid an average of $55.78 per hour for eight hours at the time of IP's acquisition of TIN. Hoffman Decl. ¶ 19(a), Dkt. No. 3. Defendants multiplied these numbers by the Labor Code's maximum recovery of thirty days to arrive at an amount of $133,872 for waiting time penalties of exempt employees. Id. ¶¶ 19(a)-(c). Similarly, Defendants state that there were seventy-eight non-exempt employees who were getting paid an average of $22.52 per hour for eight hours a day during the time of the acquisition. Id. ¶¶ 20(a)-(b). They again multiplied these numbers by thirty days and estimated an amount of $421,574 for waiting time penalties of non-exempt employees. Id. ¶ 20(d).

Because Defendants substantially changed the waiting time penalties amount—from $421,574 to $1,707,916.80—in their Opposition, the court will briefly address the new non-exempt waiting time penalties calculation. See Cohn v. Petsmart, Inc., 281 F.3d 837, 840 n. 1 (9th Cir. 2002) (explaining that a court may properly consider evidence the removing party submits in its opposition to remand, even if this evidence was not submitted with the original removal petition). In their Opposition, Defendants assert there are actually 316 terminated non-exempt employees instead of 78 as in their original estimate. Hoffman Supp. Decl. ¶ 20(a), Dkt. No. 24-3. They based this number on the total number of TIN employees terminated across all of TIN's former California facilities during the relevant class period, instead of limiting themselves to the Gilroy Bay Sheets facility as they did for all other calculations. See id. Multiplying the 316 employees by $22.52 per hour for eight hours a day for thirty days, Defendants calculated the new $1,707,916.80 amount. Id.

Regardless of which calculation is considered, it is flawed for the same reasons as discussed in previous sections. Whether considering just the Gilroy Bay Sheets facility exempt and non-exempt employees or all terminated TIN employees, Defendants assume that each employee would be able to recover the maximum thirty days of penalties. Defendants have pointed to no statements by Plaintiff nor evidence in their own possession to support these assumptions. As such, it is unreasonable to assume the 100% violation rate proposed by Defendants.

**5. Labor Code §§ 558, 1197.1, 226 and PAGA Penalty Calculations**

In his complaint, Plaintiff invokes the statutory penalties available under Labor Code §§ 558, 1197.1, 226 and PAGA in connection with his claims. Defendants use identical underlying variables in calculating the statutory penalty estimates pursuant to Labor Code §§ 558, 1197.1, 226 and PAGA. Therefore, the court will analyze these claims together.

Labor Code § 558 provides for an initial civil penalty in the amount of "fifty dollars ($50) for each underpaid employee for each pay period for which the employee is underpaid" and subsequent penalties in the sum of "one hundred dollars ($100) for each underpaid employee for each pay period for which the employee is underpaid." Cal. Lab. Code § 558(a)(1)-(2). Labor Code § 1197.1 provides for an initial civil penalty of "one hundred dollars ($100) for each underpaid employee for each pay period for which the employee is underpaid" and subsequent penalties in the sum of "two hundred fifty dollars ($250) for each underpaid employee for each pay period for which the employee is underpaid." Cal. Lab. Code § 1197.1(a)(1)-(2). Labor Code § 226 permits penalties in the amount of "fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period." Cal. Lab. Code § 226(e)(1). PAGA provides for an initial civil penalty in the amount of one hundred dollars ($100) for each "aggrieved" employee for each pay period for which the employee experienced a violation of the Labor Code and subsequent penalties of two hundred dollars ($200) for each aggrieved employee for each pay period for which the employee experienced a violation of the Labor Code. Cal. Lab. Code § 2699(f)(2).

In calculating statutory penalties, Defendants limit the time period to one year due to the statute of limitations. Hoffman Decl. ¶¶ 28, 33, Dkt. No. 3. Defendants estimate there were sixty FTEs during this one-year period and calculate thirty-two pay periods during the same year. Id. ¶¶ 28, 30, 33, 35. Defendants include all FTEs in the respective classes and assume that every employee would receive the initial violation amount. Defendants further assume that every employee would receive the subsequent violation amount for all thirty-two pay periods. Based on these assumptions, Defendants calculate each respective statutory penalty: $195,000 for Section 558 penalties, $471,000 for Section 1197.1 penalties, $189,000 for Section 226 penalties, and

14
Case No.: 5:13-CV-05272-EJD
ORDER GRANTING PLAINTIFF'S MOTION TO REMAND

$204,000 for PAGA penalties. Hoffman Decl. ¶¶ 31, 36, 40, 44, Dkt. No. 3. Defendants' assumptions as to these statutory penalties are unsupported by the record for the same reasons identified by the court in previous sections, i.e. that there was a 100% violation rate.[5]

### 6. Attorneys' Fees Calculations

Defendants ask the court to consider the attorneys' fees sought by Plaintiff in calculating the amount in controversy. Attorneys' fees may be included in the calculation of the amount in controversy supporting CAFA jurisdiction. See Galt G/S v. JSS Scandinavia, 142 F. 3d 1150, 1156 (9th Cir. 1998) (holding that "where an underlying statute authorizes an award of attorney's fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy"). Considering that several statutes invoked by Plaintiff authorize the award of attorneys' fees, Defendants' inclusion of the fees is reasonable. See, e.g., Cal. Lab. Code § 218.5 ("[I]n any action brought for the nonpayment of wages, fringe benefits, or health and welfare or pension fund contributions, the court shall award reasonable attorney's fees and costs to the prevailing party if any party to the action requests attorney's fees and costs upon the initiation of the action"). However, as Defendants' attorneys' fees are based on a benchmark percentage of Defendants' unsupported amount in controversy estimate, the attorneys' fees calculations are similarly unreliable. See Hoffman Decl. ¶ 49, Dkt. No. 3.

### b. Defendants' "Ultimate Amount in Controversy"

Given that Defendants have failed to show any reasonable individual class estimate by a preponderance of the evidence, the court cannot find that Defendants have shown by a preponderance of the evidence that these class estimates, cumulatively, exceed $5,000,000. In an attempt to avoid this conclusion, Defendants argue that "the Complaint applies to all of Defendants' California facilities, yet Defendants based their calculations on only one facility… [t]herefore, the amounts calculated by Defendants in support of removal are only the 'tip of the iceberg' relative to the entire amount put into controversy by Plaintiffs." Opp'n at 3:21-25, Dkt.

---

[5] Because the court finds that the assumptions used to calculate the statutory penalties to be flawed, it need not address the parties' dispute as to whether the full value of the PAGA claims can be considered for purposes of determining the amount in controversy for CAFA jurisdiction.

No. 24. Indeed, Defendants argue that "logic dictates the ultimate amount in controversy for all California employees… at all of Defendants' California facilities would be much higher." Hoffman Decl. ¶ 2, Dkt. No. 3.

While Defendants' "tip of the iceberg" argument is an attractive one, they fail to provide even basic pieces of information from which the court could find that, under this expanded view, the amount-in-controversy likely exceeds $5,000,000. For instance, Defendants do not specify how many facilities exist in California. Defendants state in their Opposition, without evidence from their proffered declarations, that there are seven TIN facilities in California; however they do not provide the total number of California IP facilities. Opp'n at 3:23, Dkt. No. 24. Further, Defendants do not provide the number of employees in all California IP and TIN facilities, despite the fact that they contend the classes encompasses "'[a]ll California employees,' including employees at IP sites that were not previously owned by TIN." Opp'n at 7:20-21, Dkt. No. 24. Nor do they explain whether the Gilroy Bay Sheets facility, on which they based most of their calculations, is typical of their other California facilities in terms of total size, number of non-exempt and exempt employees, and operating procedures. Such information is squarely within Defendants' control. See Roth, 799 F. Supp. 2d at 1130. Absent such information, the court has no basis on which to find the amount-in-controversy requirement is satisfied. Furthermore, as explained in detail in this Order, where Defendants did provide numbers and calculations, they failed to adequately tailor that data to the scope of Plaintiff's class definitions. It would thus be inappropriate for the court to extrapolate these estimates out to the entire class. See Pham v. JPMorgan Chase Bank, N.A., No. 12-CV-06579, 2013 WL 1501505, at *3 (N.D. Cal. Apr. 10, 2013) (remanding action where defendants' amount in controversy calculation, which extrapolated from three class representatives to the entire class, was unsupported by the record); see also Altamirano v. Shaw Indus., Inc., No. 13-CV-0939, 2013 WL 2950600, at *7 (N.D. Cal. June 14, 2013) (explaining that the "Court will evaluate the reasonableness of any assumed [wage and hour] violation rate based on the evidence submitted and the allegations contained in the complaint").

## IV. CONCLUSION

For the foregoing reasons, the court finds that Defendants have not met their burden of establishing by a preponderance of the evidence that the amount in controversy in this case exceeds $5,000,000. Accordingly the court GRANTS Plaintiff's Motion to Remand.

The clerk shall remand this action to Santa Clara County Superior Court and CLOSE this file.

**IT IS SO ORDERED**

Dated: May 20, 2014

EDWARD J. DAVILA
United States District Judge